391 So.2d 1286 (1980)
LAKE FOREST, INC.
v.
KATZ & BESTHOFF # 9, INC.
No. 11159.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 1980.
Stone, Pigman, Walther, Wittmann & Hutchinson, Michael R. Fontham, J. Broocks Greer, III, and Sarah S. Vance, New Orleans, for Lake Forest, Inc. and Kenilworth Mall, Inc., plaintiffs-appellants.
Bronfin, Heller, Feldman & Steinberg, Fred Bronfin and Bernard H. Berins, New Orleans, for Katz & Besthoff No. 9, Inc., defendant-appellee.
Before SAMUEL, BOUTALL and BARRY, JJ.
*1287 SAMUEL, Judge.
Lake Forest, Inc. and its subsidiary Kenilworth Mall, Inc. appeal from a judgment dismissing their eviction suit against Katz & Besthoff # 9, Inc.
Kenilworth Mall entered into a lease with Katz & Besthoff # 9 for premises to be used as a drugstore in the Kenilworth Mall Shopping Center in the City of New Orleans.[1] The lease provided for payment of a monthly rental of $2,045 during the terms of the lease (and escalating thereafter) "in advance of the first day of every month." In addition, it provided for a subsequent annual rental based on a percentage of net sales for the preceding fiscal year. This percentage was to be computed, reported and paid within ninety days of September 30, the close of the fiscal year.
For several years the lessee was dissatisfied with the adequacy of the air conditioning as it was maintained by the lessor, and in 1978 the condition became acute. By letter dated December 11, 1978 complaint was made as to air conditioning problems occurring between December 3 and December 8, 1978. Thereafter, the president of Katz & Besthoff # 9, Sidney Besthoff, III, telephoned Howard Beck, the president of Lake Forest, to discuss the air conditioning maintenance. The parties agreed to continue discussions, with Mr. Besthoff offering to have his corporate engineers examine the air conditioning (the units were on the roof of the building). Mr. Beck agreed and also undertook to have the units examined. No examination was made by Katz & Besthoff # 9 prior to December 31, 1978 when it made a written report to Lake Forest that the percentage of the rent due under the lease for the preceding fiscal year was $37,692.66. The letter stated in part: "Check to be mailed when agreement reached regarding the air conditioning problem at this store."
Upon receipt of the letter withholding the percentage rent Beck wrote to Besthoff rescinding permission to survey the air conditioning units and averring that the operation and maintenance of the units was the landlord's (Lake Forest's) responsibility. We note there was insufficient time to make repairs prior to receipt of this letter which rescinded permission to survey the units.
On February 22, 1979 Lake Forest placed Katz & Besthoff # 9 in default for nonpayment of the percentage rent. Under the terms of the lease, failure of the lessee to correct such a default within 30 days allowed the lessor to cancel the lease "immediately or as of any date which the lessor may select." Katz and Besthoff # 9 did not make payment within the 30 day period and Lake Forest cancelled the lease. Lake Forest did continue to accept the monthly basic rent through March, 1979. However, after the lease was cancelled these checks were returned.
On April 27, 1979 Lake Forest sent lessee a notice to vacate by certified mail, and a similar notice also was served by the civil sheriff. The mailed notice was received April 30, 1979.
On April 25, 1979 Katz & Besthoff # 9 mailed two checks to Lake Forest for the basic monthly rent for May. These checks were returned. On May 4, 1979 (after receipt of the notice to vacate) Katz & Besthoff # 9 sent the monthly rent for May and the annual percentage rent they had previously withheld. This check was returned as were checks dated May 25, 1979 for the percentage rent and basic monthly rental.
After service of the notice to vacate the parties started negotiations for a new lease. While these negotiations were pending a tender of the outstanding basic monthly rent and annual percentage rent was made on July 2, 1979. These checks were retained (but not negotiated) by Lake Forest, whose comptroller went on vacation prior to receipt of a letter from Katz & Besthoff # 9 ending negotiations on July 9, 1979.
*1288 Proceedings then were instituted to enforce cancellation of the lease; the rule for eviction was filed on July 13, 1979. The checks were returned July 26, 1979.
At the trial the parties stipulated the units were in need of repair, and testimony indicates Lake Forest had been repairing the system on a hit-or-miss basis while performing regular maintenance on the units.
The trial court found for defendant, stating that withholding rent prior to making repairs did not satisfy the requirements of C.C. Art. 2694,[2] but that the tenant was precluded from making the repairs and then withholding the cost thereof from the rent by the action of the landlord in withdrawing permission to survey the units prior to placing defendant in default.
Lake Forest appealed and Katz & Besthoff # 9 answered the appeal contending the district court erred in overruling certain exceptions filed prior to trial, namely dilatory exceptions of prematurity and nonjoinder of a necessary party plaintiff, and peremptory exceptions of no right or cause of action.
The questions presented by this appeal are whether or not a lessee may withhold the rent prior to his making necessary repairs, if the lessee is precluded from making those repairs due to actions of the lessor, and the merit, if any, of appellee's exceptions.
The basic purpose of Article 2694 is to allow a lessee to repair at the lessor's expense those things which the lessor is required to repair.
Shell v. Banks[3] has withstood the test of time as the leading judicial interpretation of C.C. Art. 2694. In that case the court set out these three prerequisites to the lessee's use of the repair and deduct article. First, the lessee must call upon the lessor to make the repairs and thereby put the latter in default of his obligation to repair. Second, the lessee must show the repairs are indispensable. And finally, the lessee must in fact make the necessary repairs neglected by the defaulting lessor, and prove that the price paid for making the repairs is just and reasonable.[4]
Although the cases hold that failure of the lessor to accomplish the necessary repairs is not justification for the lessee's refusal to pay rent when due, the lessee may either make the repairs and deduct the cost thereof, or sue for cancellation of the lease.[5] We know of no case and have been cited to none where, as here, the lessor has prevented the lessee from exercising the right granted to it under Article 2694.
The trial court found that before the letter of default was sent by the plaintiff to the defendant (giving 30 days to pay the full rent due), there was a prior letter depriving the lessee from the opportunity of exercising its Article 2694 right to make necessary repairs and then deduct the cost thereof from its rental payments. The record supports this finding. The record also supports a finding that the air conditioning was functioning so inadequately as to effectively prevent a proper and contemplated use of the leased premises by the defendant. Thus, the court found the lessee was not in default so as to support an eviction; it refused to permit the lessor to unilaterally deny the lessee the opportunity to repair and at the same time demand the rent.
The decision of the trial court is practical and equitable. While the jurisprudence under Article 2694 is to the effect that rent can be withheld only after repairs actually have been made, in our view a lessor cannot effectively prevent the making *1289 of the repairs and thus deprive the lessee of one of his rights. This view is consistent with our Supreme Court's rationale in Cox v. Department of Highways, 252 La. 22, 209 So.2d 9:
"Where the promisee makes performance impossible, it is unimaginable that any civilized system of law would allow that promisee to recover damages for the promisor's failure to perform under the contract. It is a long established principle of law that he who prevents a thing may not avail himself of the non-performance he has occasioned. The principle is founded upon the premise that one should not be able to take advantage of his own wrongful act."
Our affirmance of the trial court judgment makes a consideration of the exception issues, raised in appellees' answer to the appeal, unnecessary.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
BARRY, J., dissents with written reasons.
BARRY, Judge, dissenting.
Our law provides that the lessee may be expelled from the property if he fails to pay the rent when it becomes due. LSA-C.C. Art. 2712. If the lessor neglects to fulfill his obligations it may cause dissolution of the lease. LSA-C.C. Art. 2729. If a lessor neglects or refuses to make necessary repairs, the lessee may cause those repairs to be made and deduct the price from the rent due on proving that the repairs were indispensable and that the price which was paid was just and reasonable. LSA-C.C. Art. 2694.
Our jurisprudence interpreting these articles is well settled that a lessor's breach of his obligation to repair the leased premises does not exonerate the lessee from his obligation to pay the stipulated rental if he continues to occupy and use the premises. Degrey v. Fox, 205 So.2d 849 (La.App., 4th Cir. 1968); Cameron v. Krantz, 299 So.2d 919 (La.App., 3rd Cir. 1974).
If the lessor fails to make repairs required by the lease or by law, the lessee at his option may:
(1) Complete the repairs himself within a reasonable time, and then deduct the cost of them from the rent to become due, on proving that the repairs were indispensable and that the price paid was just and reasonable; or
(2) He may terminate the lease and surrender possession of the premises to the owner. Cameron v. Krantz, 299 So.2d 919 (La.App., 3rd Cir. 1974).
It is clear that lessor and lessee amicably discussed the need for air conditioning repairs. Each agreed to investigate what should be done. However, lessee then chose to use economic pressure by failing to pay its annual rental. If lessee had been in good faith it would have paid what was due and while it had the opportunity to determine what repairs should be made, effected the repairs and paid for same, then used this payment as an offset against rents due.
The annual rental was payable to lessor by December 31, 1978 for the fiscal year October 1, 1977 to September 30, 1978. Even though air conditioning problems existed prior to and during that period, it was stipulated that lessor made repairs from time to time and did have a maintenance program.
Lessor had no alternative but to terminate the lease in view of lessee's failure to timely pay its rental while continuing to occupy the premises. After lessee defaulted it effectively lost any rights it may have had under the lease.
LSA-C.C. Art. 2694 provides that if the lessor refuses or neglects to make necessary repairs ... "the lessee may himself cause them to be made, and deduct the price from the rent due, ..." Here the lessor did not refuse to make necessary repairs. The lessee had the opportunity and time on prior occasions to make repairs, but didn't. Finally, withholding "rent due" does not mean past rent due. All lessee had to do was place lessor in default, make the repairs, and deduct the expense from the *1290 rents due. The lessee chose to withhold rent, effect no repairs, and continue to occupy the premises, all of which constitutes bad faith and a breach of contract.
I therefore respectfully dissent.
NOTES
[1] Subsequent to the execution of the lease the ownership of the mall and the interest of that corporation in the lease was transferred to Lake Forest, Inc. as part of a corporate reorganization.
[2] "If the lessor do not make the necessary repairs in the manner required in the preceding article, the lessee may call on him to make them. If he refuse or neglects to make them, the lessee may himself cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable." LSA-C.C. Art. 2694.
[3] 8 Rob. 168.
[4] Brignac v. Boisdore, La.App., 272 So.2d 463, affirmed, La., 288 So.2d 31.
[5] See Dikert v. Ruiz, La.App., 231 So.2d 633; Bruno v. Louisiana School Supply Company, Inc., La.App., 274 So.2d 710.